IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBIN R. KING, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-CV-04153-C-WBG |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**ORDER AND OPINION AFFIRMING**
<u>**COMMISSIONER'S FINAL DECISION DENYING BENEFITS**</u>

Pending is Plaintiff Robin King's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. For the following reasons, the Commissioner's decision is **AFFIRMED**.

I.  **BACKGROUND**

Plaintiff was born in 1968 and has at least a high school education. R. at 16, 21, 36, 80, 162, 210. She previously worked as a grader (dressed poultry), assembler (production), and as a salesperson (horticultural and nursery products). R. at 20. Plaintiff also worked part-time as an in-home caregiver from May 2014 through May 2019. R. at 18, 37, 188.[2] In March 2018, Plaintiff applied for disability insurance benefits, alleging a disability onset date of March 1, 2005. R. at

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] As part-time employment, this work activity did not meet the definition of "substantial gainful activity." R. at 18.

10, 162-68.[3] In September 2018, her applications were denied. R. at 85-90. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 92-93.

On September 5, 2019, ALJ Vicky Ruth held a hearing during which Plaintiff and a vocational expert testified. R. at 30-62. Thereafter, on November 6, 2019, the ALJ issued a decision finding Plaintiff is not disabled. R. at 10-23. The ALJ determined Plaintiff's severe impairments included "degenerative disc disease with multilevel cervical spondylosis, fibromyalgia, tarsal tunnel syndrome with history of release, and obesity." R. at 12. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: "[Plaintiff can] never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to workplace hazards, such as dangerous, moving machinery and unprotected heights." R. at 15.

Based on her review of the record, her RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff can perform her past relevant work as a grader (dressed poultry), assembler (production), and salesperson (horticultural and nursery products), and therefore, is not disabled. R. at 20-22. Alternatively, the ALJ determined Plaintiff can work as a cleaner (housekeeper), cashier II, or a mail clerk. R. at 21-22. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-6, 156-158. She now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court

---

[3] Plaintiff later amended her alleged disability onset date to March 20, 2018. R. at 10, 35, 186.

must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Collins*, 791 F.3d 923, 928 (8th Cir. 2015)). The Eighth Circuit "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010).

"It is not the role of [a reviewing] court to reweigh the evidence presented to the ALJ or to try the case . . . de novo." *Cox v. Astrue,* 495 F.3d 614, 617 (8th Cir. 2007) (citation omitted). When reviewing the record for substantial evidence, a court may not substitute its own judgment for that of the ALJ. *Hilkemeyer v. Barnhart,* 380 F.3d 441, 445 (8th Cir. 2004). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

### III. DISCUSSION

Plaintiff argues this matter should be remanded because the ALJ (A) failed to find her mental impairments were not severe at step two, (B) did not properly evaluate her treating

podiatrist's opinion, and (C) formulated an RFC that is not supported by substantial evidence. Doc. 12 at 8-21.

**A.     Severity of Plaintiff's Mental Impairments**

**(1)     Standard**

When determining whether an individual is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). At step two, which is at issue in this matter, the ALJ determines whether the individual has an impairment or combination of impairments that is "severe." *Id.* § 404.1520(c). If it is found that an individual does not have a severe medically determinable impairment or combination of impairments, the ALJ will find the individual is not disabled and will not proceed to the next step of the evaluation process. *Id.* §§ 404.1520(c); 404.1520(a)(4).

An impairment or combination of impairments is considered "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citation omitted) (noting a slight abnormality that does not "significantly limit" a plaintiff's "ability to do basic work activities" will not be considered severe); *Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988) (citations omitted) ("Disability benefits may be denied based on the claimant's inability to fulfill the severity requirement only if the claimant's impairments are slight and…do not affect any of the basic work activities"). "Basic work activities," which are defined as "abilities and aptitudes necessary to do most jobs," include physical functions; capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

While a plaintiff has the burden of establishing her impairment or combination of impairments is severe, the burden is "not great." *See Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001); *see also Kirby*, 500 F.3d at 707 (observing severity "is not an onerous requirement for the claimant to meet . . . but it is also not a toothless standard."). Any doubt as to whether the requisite showing of severity has been made at step two should be resolved in favor of the claimant. *Dewald v. Astrue,* 590 F. Supp. 2d 1184, 1199 (D. S.D. 2008); *see also Gilbert v. Apfel,* 175 F.3d 602, 605 (8th Cir. 1999) (recognizing "contradictory evidence in the administrative record" did not support the ALJ's decision to stop the sequential analysis at step two).

In 1985, a Social Security Administration ruling limited ALJs to considering only "medical findings" when determining whether an impairment(s) was severe. SSR 85-28, 1985 WL 56856, at *4. However, in 2016, the Social Security Administration issued another ruling that, in pertinent part, stated the following:

> At step 2 of the sequential evaluation process, we determine whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death…. At this step, we will consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments that meets our duration requirement.

SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016).[4] Thus, an ALJ first considers objective medical evidence when determining if an individual suffers from a severe medically determinable impairment or combination of impairments. *Id*. If the objective medical evidence alone does not establish a severe medically determinable impairment or combination of impairments, an ALJ evaluates a claimant's symptoms and functional limitations. *Id*.

---

[4] The Court notes that both the 1985 and 2016 rulings are cited in the ALJ's decision. *See* R. at 11.

### (2) ALJ's Consideration at Step Two

At Step Two, the ALJ found Plaintiff's depression and anxiety were non-severe. R. at 13. In making this finding, the ALJ considered the four broad areas of mental functioning known as the "paragraph B" criteria set out in the regulations for evaluating mental disorders and in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1. These four areas are understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The ALJ considered "all of the relevant medical and non-medical evidence" including evidence from "medical sources; evidence from [Plaintiff] and people that know [Plaintiff];" and "evidence from school, vocational training, work and work-related programs." *Id*. In addition, the ALJ considered Plaintiff's daily activities in the home and in the community. *Id*.

Specifically, the ALJ noted that upon completing her Adult Function Report on August 16, 2018, Plaintiff attributed the limitations she suffers from while performing routine activities of daily living to her *physical* impairments, rather than her mental impairments. R. at 13; *see also* R. at 232-39. Further, the ALJ acknowledged Plaintiff previously stated her daily activities were only mildly limited, if at all, by her impairments. R. at 13. In support, the ALJ cited to a medical record in which Plaintiff indicated she had recently travelled to Illinois. *Id*.; *see also* R. at 546-47. The ALJ also cited medical records where Plaintiff reported she likes "to go to the river, like[s] to go to auctions, [spend] time with the grandkids… [and her] husband, occasional[ly] cooking, and enjoys to be [sic] outside gardening in the summer, spring, and fall." R. at 13-14 (citing R. at 510). The ALJ also observed Plaintiff had advised a medical provider that "she does really well at taking care of her personal hygiene . . ." but struggles with eating a well-balanced meal. R. at 14, 519.

The ALJ found Plaintiff's medical evidence "fails to document the presence of objectively discernible medical signs reasonably consistent with a finding that [Plaintiff] has a moderate or greater limitation in any of the broad areas of mental functioning." *Id*. at 14. She further acknowledged Plaintiff had not "presented with any objectively appreciable, psychologically-based abnormalities since the amended alleged onset date of disability." *Id*. The opinion recognized Plaintiff's treatment was limited to medication management and community support services – "the latter of which she established with the primary goal of acquiring benefits." *Id*. (citing R. at 504); *see also Buford v. Colvin,* 824 F.3d 793, 797 (8th Cir. 2016) (recognizing that conservative treatment may indicate that an impairment is not disabling).

Based on the totality of the record, the ALJ found Plaintiff had "no limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself." R. at 14. She concluded Plaintiff's "diagnosed mental impairments do not result in at least a moderate restriction in one of the four functional areas that comprise the 'paragraph B' criteria," and therefore, "they are non-severe." *Id*.

Plaintiff contends this matter should be reversed because the ALJ found her major depressive disorder and post-traumatic stress disorder to be "non-severe." Doc. 12 at 15. Further, she claims she met her burden of showing her diagnosed major depressive disorder and post-traumatic stress disorder were more than slight abnormalities. *Id*. at 16. In support, Plaintiff notes that she underwent mental health treatment at Burrell Behavior Health ("BBH") twice per month. *Id.*; *see also* R. at 504-555. Plaintiff also points to the medical records from her initial visit at BBH in which she was "clearly distraught and cried," and also from subsequent visits in which she

reported being "overwhelmed with anxiety and depression and having flashbacks that resulted in unmanageable anxiety." Doc. 12 at 16; *see also* R. at 536, 538, 554-55.

Plaintiff claims that despite her mental health services, she continued to struggle with major depression, and there were days where she did not get dressed. Doc. 12 at 16. Consistent with the treatment records, Plaintiff argues she reported to the Social Security Administration that she had difficulty with memory, completing tasks and concentration, and had problems following spoken instructions and difficulty handling stress. *Id*. at 17; *see also* R. at 237-38. Plaintiff states her daily activities were improperly considered because the record offered no insight into the frequency in which she engaged in her activities of daily living. *Id*. Finally, Plaintiff argues her diagnoses with major depressive disorder further suggests that her impairment is severe. *Id*. The Court disagrees.

The record as a whole supports the ALJ's finding that Plaintiff's mental impairments were not severe. Mental status examinations revealed Plaintiff's cognitive function was "good" and her judgment was "intact" or "normal." R. at 465, 471, 536. Further, the records establish Plaintiff expressed thoughts spontaneously, had no difficulties with her speech or flow of thought, and had no difficulties with her memory. R. at 465, 471, 515, 536. In fact, just three months before the hearing before the ALJ, Plaintiff denied trouble concentrating and reported she had no difficulty with doing her work, taking care of things at home, or getting along with other people. R. at 469-70.

Plaintiff's depression disorder was considered "mild." R. at 469-71, 521, 538. Her family doctor recommended she take anxiety medication "as needed." R. at 464. During her treatment with BBH, Plaintiff indicated her difficulties performing work, or work-like activity, were solely attributed to her physical impairments, not mental. R. at 511. Specifically, she stated, "I cannot

8
Case 2:20-cv-04153-WBG   Document 24   Filed 01/31/22   Page 8 of 14

walk a long ways [sic], cannot lift much, grasping and holding on to things due to physical health." *Id*. The record does not contain objective medical evidence indicating Plaintiff's mental impairments significantly limit her ability to do basic work activities, and therefore, the ALJ's finding that Plaintiff's mental impairments were "non-severe" was proper. Although the burden of establishing a severe impairment at Step 2 is not onerous requirement for the claimant to meet, it is not a "toothless" standard. *Kirby*, 500 F.3d at 705. There is substantial evidence in the record that supports the ALJ's determination that Plaintiff's mental impairments were not severe.

**B.      The ALJ's Consideration of Terrence Klamet, DPM's letter**

Dr. Klamet, Plaintiff's treating podiatrist, provided a letter dated January 10, 2019. R. at 459. After providing a brief description of her diagnoses, his treatment and her complaints, Dr. Klamet wrote, "I believe this is one individual who should probably be disabled as far as her daily activities are concerned." *Id.* The ALJ did not provide a written analysis of Dr. Klamet's January 2019 letter, and the parties disagree as to whether this failure requires remand. Doc. 12 at 10-13; Doc. 17 at 10-11. Although Defendant generally agrees the ALJ was required to discuss all medical opinions, Defendant contends remand is not required because Dr. Klamet's letter was not a medical opinion, but a letter addressing issues reserved for the Commissioner of Social Security (i.e., whether someone is disabled). Doc. 17 at 9-11. Although Plaintiff agrees an opinion as to whether someone is disabled is an issue reserved for the Commissioner, she maintains the remainder of Dr. Klamet's letter should have been considered because it constitutes a medical opinion. Doc. 12 at 12; Doc. 18 at 3-4.

An opinion as to whether an individual is "disabled" or "unable to work" is "an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)

(quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) and citing 20 C.F.R. § 404.1527(e)(1)); *see also* 20 C.F.R. §§ 404.1527(d)(1). Thus, if a treating provider solely states a claimant is disabled or cannot be gainfully employed, the treating provider's opinion is not considered a medical opinion that should be credited or weighed. *See Stormo*, 377 F.3d at 806; *see also* 20 C.F.R. § 404.1527(d) (recognizing that opinions on issues reserved to the Commissioner are not "medical opinions.").

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" with regard to abilities to perform physical, mental, or other demands of work activities." 20 C.F.R. §§ 404.1513(a)(2). Defendant argues Dr. Klamet's letter is not a medical opinion because it is not based on his own independent assessment and diagnostic technique. Doc. 17 at 11. Rather, the letter repeats Plaintiff's subjective complaints. *Id*.

At her last visit with Dr. Klamet on December 14, 2018, Plaintiff's "chief complaint" was to request a letter for her attorney for disability. R. at 454. Dr. Klamet noted Plaintiff had a history of "fibromyalgia, idiopathic neuropathy, bilateral tarsal tunnel syndrome of which the left tarsal tunnel and heel were operated on in 2015." R. at 455. He then listed several complaints and statements made by Plaintiff, including she "experiences pins and needles" and her daily activities are "drastically diminished" because of her "inability to walk or stand for any length of time." *Id*. Plaintiff also stated her "quality-of-life has been affected adversely" because "she can no longer perform her job or any of her daily activities without constant unremitting pain." *Id*.

In his letter dated January 10, 2019, Dr. Klamet references Plaintiff's history of fibromyalgia, idiopathic neuropathy, and bilateral tarsal tunnel. R. at 459. His letter then repeats the verbal comments made by Plaintiff at her last visit in December 2018, including Plaintiff

experiencing "a numb feeling along with unremitting pins and needle feelings in both feet." *Id*. He further states these symptoms have "drastically diminish[ed] her ability to walk or stand for any length of time." *Id*. Dr. Klamet also includes the statement from Plaintiff that her "quality of life has been severely affected adversely and can no longer perform her job or any of her daily activities without constant, unremitting pain." *Id*.

The statements made in Dr. Klamet's letter do not constitute a medical opinion. Rather, the letter provides an almost verbatim recital of Plaintiff's verbal comments made at the December 2018 appointment concerning how she described her limitations caused by her alleged impairments. The letter does not contain a medical opinion as to what Plaintiff can still do despite her impairments, nor does he opine about the impact of her physical limitations on her ability to conduct work-related activities. Pursuant to the applicable regulations, Dr. Klamet's letter does not constitute a medical opinion, and the ALJ did not err by failing to provide a written analysis of the letter in her decision.

**C.     The ALJ's RFC**

Plaintiff argues the RFC is not supported by substantial evidence because the ALJ failed to express the RFC in a "function-by-function manner," (B) lacked support in finding that she could perform the standing, or walking, limitations for light work, and (C) did not consider her mental impairments in combination with her other impairments, and, had she, there would have been additional limitations in the RFC. Doc. 12 at 1, 8-10, 19-20. Accordingly, Plaintiff argues this matter should be reversed and remanded. *Id*. at 7-21.

**(1)     Standard**

One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all the relevant evidence, including the medical

records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*.

**(2)    The ALJ's RFC Determination**

The ALJ found Plaintiff could perform light work (as defined in 20 C.F.R. § 404.1567(b)) with additional limitations. R. at 15. As noted, and considered by the ALJ, Plaintiff's severe impairments predated the alleged onset date of disability. R. at 17. On the amended disability date, Plaintiff presented to MU Health Care where she demonstrated "16/18 positive tender points, slight stiffness in her neck, pain with rotation of her shoulders, trace edema in her ankles, and metatarsalgia to light squeeze of the forefoot." *Id*.; *see also* R. at 326. A lumbar spine scan showed degenerative disc disease at L1-L2, and a cervical spine scan showed multilevel spondylosis. R. at 17; *see also* R. at 327-28. An x-ray of Plaintiff's thoracic spine noted "mild degenerative endplate changes," no compression disconformity, and "no segmentation defendant." R. at 477.

In March 2018, Plaintiff received bilateral sacroiliac joint and piriformis trigger point injections, and, subsequently, the only persistent physical abnormality with which Plaintiff presented was obesity. R. at 17, 491. The medical records indicate that although Plaintiff showed positive Tinel's sign and pain with straight leg raise at visits with her podiatrist in May and December of 2018, other examinations revealed "normal findings." R. at 471, 479, 483.

Contrary to Plaintiff's contention that she is unable to ambulate, the objective medical evidence does not support such a determination. Plaintiff underwent foot surgery in August 2015. R. at 232, 421, 438. Examination notes in November 2016 indicate Plaintiff ambulated independently and had a normal gait. R. at 346. No medical record since Plaintiff's amended disability onset date provides an indication that she has any difficulty with ambulating. Accordingly, the ALJ's conclusion that Plaintiff could perform light work including "a good deal of walking or standing" is supported by substantial evidence.

Furthermore, the ALJ properly considered Plaintiff's step two impairments – both severe, and non-severe – in her RFC analysis. She concluded "the cumulative medical and non-medical evidence does not support a finding that [Plaintiff] has any greater or additional limitations." R. at 20. The ALJ found the record does not document Plaintiff presenting with "pain behavior, profound emotional distress, regular exacerbations of her impairments, fatigue, or deficits with attention or concentration that would support a finding that she either requires extra work breaks in addition to, or would be off-task beyond, what can be accommodated by the work breaks customarily offered by competitive employment." *Id*. at 18.

Based on the foregoing discussion of the medical evidence, including medical opinions, and its careful review of the record, the Court finds the ALJ's RFC is not only supported by medical opinions and medical evidence, but is supported by substantial evidence in the record as a whole. Accordingly, the Court must affirm the Commissioner's decision.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:     January 31, 2022                    */s/ W. Brian Gaddy*
                                              W. BRIAN GADDY
                                              UNITED STATES MAGISTRATE JUDGE